SMITH, Respondent, v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Appellant.

(137 N. W. 598.)

**Judgment—Default—Setting Aside Judgment—Abuse of Discretion.**
Where a summons against defendant, served on commissioner of insurance as its agent, was by him forwarded by mail to defendant's secretary on the same day, and correspondence followed between defendant's attorneys in Ohio and an attorney residing where case was pending, the latter having notified the foreign attorneys that appearance must be entered in order to contest the case and asking for authority to enter such appearance, but more than a month elapsed before an answer was made to this letter of advice, which response, by wire, was five days after default judgment entered in the action; **held,** that the affidavits in support of motion to set aside the default fail to show any reasonable excuse for the delay in entering appearance, or that there was inadvertence, surprise or excusable neglect on defendant's part in failing to appear and answer; that there was no abuse of discretion by trial court in refusing to open default.

(Opinion filed October 1, 1912.)

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Action by Annie E. Smith against the Order of United Commercial Travelers of America, to recover on a policy of insurance or certificate of membership in defendant company, issued to plaintiff's deceased husband. From an order denying defendant's motion to vacate a default judgment, it appeals. Affirmed.

*A. W. Wilmarth* and *Voris, Sater, Seymour* and *Peace,* for Appellant.

The proposed answer contains, among other things, allegations substantially to the effect: That under the insurance policy involved, payments shall cover only deaths, etc., resulting from bodily injury which is external, accidental, and which is proximate, sole and only cause of death; that there was no external or visible mark of any accident, etc., upon the body of decedent, which caused his death, etc.; that the alleged injury and disability happened in consequence of disease and bodily infirmity, that the alleged injury, if any, was not the proximate and sole cause of death, etc.; that the defendant's by-laws provided that its executive committee may have the remains of an injured member, in case of his death, examined by the Order by its surgeon, etc.; that the policy is voided by refusal to permit an examination of the body, if he be dead, etc., or should an autopsy be held without notice thereof to defendant, if autopsy be denied defendant on request, whether before or after burial, etc.; that these provisions were conditions, etc., and were agreed to by said Smith; that defendant had no knowledge or information of nature of injuries, nor as to cause of death, until receipt of a telegram, received two days after burial of deceased; that after certain preliminaries and request of sheriff of Beadle county, S. D. to be allowed to exhume the body and make a post mortem examination by defendant's surgeon, no reply was made, etc.

The affidavit of C. M. Taylor, medical adviser of defendant shows that on the 7th of March a summons and complaint and order restraining him from holding an autopsy was served upon him. That without an autopsy upon the body of William H. Smith there was no way in which to ascertain positively the cause of his death, and whether the piece of orange swallowed as claimed by the beneficiary was instrumental in bringing about his death.

The record as an entirety, discloses a mistake of fact without which counsel for appellant would have no standing in this court, and but for which counsel for defendant would have no judgment.

Counsel for defendant and appellant know in regard to this mistake of fact, and they are the only parties to the record who do personally know. Opposing counsel, for reasons that are obvious, may deny this statement, and summarily dispose of the matter by asserting that any such claim is made "for the purpose of misleading and deceiving the court." (Record page 86, Abst. folio 549). In support of the truthfulness of our contention, we put the correspondence passing between our offices at a time when neither of us knew, nor opposing counsel could possibly have anticipated, the use to which it has been put, against the affidavit prepared and submitted by opposing counsel for the purpose of resisting the vacation of this judgment. The letters speak for themselves.

In his letter of June 17th, Mr. Wilmarth advised the supreme attorneys, among other things, as follows:

"They (counsel for respondent) have not filed any complaint, and no action can be taken by them until they do." (Record page 72, Abst. folio 497).

The summons, with notice of service, was in the hands of appellant's attorneys at Columbus, Ohio, and from them Mr. Wilmarth awaited further instructions after his letter of June 17th. He might perhaps, have inferred that the supreme attorneys for appellant considered him as retained in the case from the reference in the letter (Record page 71, Abst. folio 491).

"We have received no copy of the petition and can do no more at this time than refer the matter to you for immediate attention. You will undoubtedly be able to interpose some motion that will give us time to examine the petition for the purpose of preparing our answer."

Counsel were further assured in this letter of June 17th "that they (counsel for respondent) will not attempt to take any advantage after I have notified them of your letter and that I would

look·after the matter for you;" and that "we will have all the time we desire in the matter."

Immediately upon the recipt of their letter of June 15th Mr. Wilmarth called upon Gardner, Fairbank & Churchill and asked for a copy of the complaint (Record page 72, Abst folio 496), and upon being told that the same had not been prepared, he stated that he had been requested to get time for answer and further asked that he might have a copy of the complaint when it was prepared.

From the assurances contained in this letter, and his previous employment in the injunction proceeding, the supreme attorneys assumed that Mr. Wilmarth understood as fully as themselves that he had been retained to represent the Order in this action. (Record 82, Abst. folios 533-534). In view of these things, and knowing of the many courtesies that the members of the bar, as a rule, are pleased to extend to one another, and particularly so in the case of counsel between whom the relations were as cordial as indicated in this letter, the supreme attorneys, in absolute reliance upon the statements contained in this letter, busied themselves with other matters (Record page 54, Abst. folio 412), awaiting the receipt of a copy of the complaint and further word from Mr. Wilmarth. The letter of the supreme attorneys to Mr. Wilmarth under date of August 7th (Record page 77, Abst. folio 515), four weeks before they knew that any complaint had been filed, furnishes "confirmation as strong as Holy Writ," of the bona fides of their action in the matter at this time.

Had there been the slightest intimation that in failing to authorize Mr. Wilmarth to enter appearance in the case, they were • endangering the interests of their client, or subjecting themselves to the conduct so reprehensible as it has pleased opposing counsel· (Record page 86, Abst. folio 549), to assert, they would have instructed Mr. Wilmarth as promptly upon the receipt of his letter of June 17th as they did immediately following the receipt of his letter of July 18th.

Will it be claimed that this could not have been done as well on the 24th day of June as thirty days later?

Upon the facts of the case, as disclosed at this time, it will hardly be claimed that there was on the part of either counsel for the appellant, any ignorance of their rights, any mistake of law, or wanton neglect.    If their action in the premises is to be spoken of as neglect, we maintain that it is only such as is contemplated and covered by the statutory provisions in section 151 Code Civil Procedure, Revised Codes South Dakota.

"It is a case of 'excusable neglect' where the party's failure to plead, or follow up his case, or to be present at his trial, was solely due to his reliance upon assurances given by those upon whom he had a right to depend (as the adverse party, or counsel retained in the case, or a competent business adviser) that it would not be necessary for him to take an active part in the case, or that the suit would not be prosecuted."    Black on Judgments, Section 340.

It was not until after the receipt of this letter of July 18th that the supreme attorneys had the slightest intimation that there was any question on the part of Mr. Wilmarth as to his authority to represent the Order in this action as fully as he had done in the other.    In order that there might be no misunderstanding or uncertainty on this point, notwithstanding his repetition of the assuring statement "that counsel for plaintiff will accept notice of appearance without terms and allow us to put in an answer within any reasonable time thereafter," the supreme attorneys wired Mr. Wilmarth not only to enter appearance but to prepare and file an answer in the case. (Record page 75, Abst. folios 510-11).

That Mr. Wilmarth fully understood the purposes of the supreme attorneys in this matter and fully believed that opposing counsel would oblige him with a copy of the pleading is conclusively shown by his letters:

"After we get the complaint in this action, we will want time to consider whether it is advisable, etc." as contained in his letter of June 17th, and the words with which he closes his letter of August 12th, the last before notifying the supreme attorneys of the judgment, as follows:

"The plaintiff's attorneys have not yet served their complaint. As soon as they do so, we will forward it to you.    We will have

thirty days to reply after they serve it." (Record page 78, Abst. folio 520).

"Undoubtedly a party has a right to depend on his attorney's keeping him informed of the progress of the case; and a judgment may be vacated for excusable neglect or surprise, although the defendant was represented by counsel." Black on Judgments, section 340; also, see, 340, A.

The sincerity of Mr. Wilmarth in not entering a general appearance and the good faith upon which he acted in declining to act for appellant as its attorney until he was directly instructed to do so, is established by the fact, that immediately upon the receipt of this information on July 25, 1911, he served notice upon opposing counsel, of his employment in the case. County v. I. F. & S. C. K. Co., 49 Ia. 659; Black on Judgments, Section 342.

The record discloses, in our opinion, nothing so 'inexcusable' as the conduct of counsel for respondent at this particular stage of the proceedings. They not only knew from the injunction proceedings that the Order would defend against any action that their client might thereafter institute against it, but they were fully advised by the answer filed by the Order in that action as to the grounds upon which such defense would be made.

The fact remains that for some act, agreement, misunderstanding or mistake or fact, upon which he had a right to rely, he did not know that the complaint had been filed, until seven weeks after judgment had been rendered thereon. (Record pages 14-55, Abst. folios 71-72, 420). McArthur v. Hanson, 60 Wis. 293; Panise v. Boswell, 10 Heisk. (Tenn.) 323; Beatty v. O'Connor, 106 Ind. 81; Bristow v. Galvin, 62 Ind. 352; Soper v. Manning, 33 N. E. (Mass.) 516; O'Brien v. Leach, 139 Calif. 220; Hull v. Vinning, 49 Pac. 537 (Wash.) Williams v. Breen, 25 Wash. 666; Douglas v. Badger State Mine, 4 L. R. A. (N. S.) (Wash.) 199-200; Investment Co. v. Hillyer, 50 Kas. 446; Denserean v. Saillant, 48 Atl. 668 (R. I.); Koch v. Wisconsin Pea Canners' Co. 131 Mo. 404; McWirter v. Donaldson, 104 Pac. 731 (Utah Sup.). See, also, Schoolmaker v. Machine Co., 51 Conn. 387; Griswold v. Lee, 1 S. D. 531; Jay v. Stockwell, 25 S.

D. 142; Citizens Bank v. Branden, 129 N. W. 102 (27 L. R. A. 858); Watson v. San Francisco and H. B. Ry. Co., 41 Calif. 20.

This case is cited with aproval in Dougherty v. Nevada Bank, 68 Calif. 133; Brady v. Donahue, 41 Pac. 41; Cutler v. Haycock, 90 Pac. 897; Cleveland v. Hopkins, 55 Wis. 387; Citizens Natl. Bank of Cisseton v. Branden, 27 L. R. A. (N. S.) 858, 126 N. W. 102; Applebaum v. Star Fire Ins. Co., 100 N. Y. Supp. 747; Bartow v. Sioux City Electric Co., 93 N. W. (Ia.) 268; Arnold v. Norfolk & New Brunswick Hosiery Company, 19 N. Y. Supp. 957; Blain v. Shaffner, 37 Ill. App. 395.

"It is also said, however, that as a general rule, in a doubtful case, the court should incline to relieve. The exercise of the court's discretion ought to tend, in a reasonable degree, to bring about a judgment on the merits of the case, and when the circumstances are such as to lead the court to hesitate upon the motion to open the default, it is better, as a rule, that the doubt should be resolved in favor of the application, proper terms and conditions being imposed." Black on Judgments, Sec. 354; Wynne v. Prairie, 86 N. C. 73; Whereatt v. Ellis, 70 Wis. 207; City Block Directory Co. v. App, 39 Pac. 985 (Colo.); Harbaugh v. Honey Lake Land Co., 109 Cal. 70.

The first principle of the administration of justice is Audi Alteram Partem, Brooms Legal Maxims. Hitchcock v. McElrath, 11 Pac. 487; Waterson v. Seat & Crawford, 10 Fla. 326.

"An inquest should be set aside unless the court can not be fully satisfied that the defendant had no evidence which would materially reduce or defeat the recovery." Leighton v. Wood, 17 Abb. Prac. (N. Y.) 177; Bailey v. Taffe, 29 Calif. 422; Williams v. Breen, 25 Wash. 666; Section 151, Code of Civil Procedure, South Dakota.

In reply.

The statute relative to opening default judgments is in substance identical with the California statute, and was evidently taken therefrom when enacted in this state. On opening default judgments the rules of practice are the same. The courts of that state hold that where no objection is made to the sufficiency

of the affidavits of merits in the lower court, and the matter proceeds to hearing upon the merits of the defense, no objection thereto can be made in the Supreme Court.   Fulweiler v. Hogs Back Mining Co., 23 Pac. 65; Melde v. Reynolds, 61 Pac. 934; Pettigrew v. City of Sioux Falls, 5 S. D. 646; Parrott v. Den, 34 Calif. 79; Nevada Bank v. Dresback, 63 Calif. 324.

It is also held in California that, under the rules of practice there, the affidavit of merits must show that the defendant has fully and fairly stated the facts of the case to his counsel.   The same language as Practice Rule 11, of this state.   Nickerson v. California Raisin Co., 61 Calif. 268; Morgan v. McDonald, 11 Pac. 350.

However, in California, it is just as universally held that a sworn answer prepared and used on the motion to open a default judgment is a sufficient showing of merits.   Fulweiler v. Hogs Back Mining Co., 83 Calif. 129, 23 Pac. 65; Melde v. Reynolds, 129 Calif. 314, 61 Pac. 932; Merchants Co. v. Los. Angeles Co., 128 Calif. 314, 61 Pac. 277; Montejo v. Robert Sherer & Co., 6 Calif. Apps. 558, 91 Pac. 261; Bowen v. Webb, (Mont.) 85 Pac. 739; Pierce v. Electric Ry. Co., 106 Pac. 563 (Mont.); Bowen v. Webb, 85 Pac. 739 (Mont.); Pierce v. Electric Railway, 106 Pac. 536 (Mont.).

An answer in this case was filed by this plaintiff, by Crawford and Warren, as her attorneys.   The injunction, as prayed for by Gardner, Fairbank and Churchill, was granted.   At this stage of the proceedings Crawford and Warren dropped entirely out of the equation, and in their stead, the plaintiff herein is represented by Gardner, Fairbank and Churchill.   There is but one logical conclusion to be drawn from these facts and circumstances, and that is, that Gardner, Fairbank and Churchill, while they nominally appear as attorneys of record against her in the injunction case, have represented the plaintiff and the children of the decedent in both actions, and that they have been recognized by the plaintiff as her attorneys from the very beginning of the injunctional proceedings, regardless of the fact that her answer in the first proceedings was filed over the names of Crawford and Warren.

It will be seen from the briefest analysis of these cases cited by respondent, that in nothing therein contained is there expressed any opinion contrary to the findings of the court in Griswold v. Lee, 1 S. D. 531, and Jay v. Stockwell, 25 S. D. 142, as referred to on pages 71, 72, 73 and 74, in our opening brief, in so far as the same are applicable to the facts of this case.

*Gardner & Churchill*, for Respondent.

Defendant did not present, on application to set aside the default judgment herein, a sufficient affidavit of merits. Rules 10 and 11 of Rules of Practice Civil Cases; Pettigrew v. Sioux Falls, 5 S. D. 646; Sagrant v. Kindred, (N. D.) 63 N. W. 151; Kirchner v. Kirckner, (N. D.) 75 N. W. 252; 1 Pl. and Pr. 360-365; Pearce v. Electric Ry., (Mont.) 160 Pac. 563.

It will thus be observed that by positive rule of court, it is not only necessary that a party applying to vacate a default judgment serve his proposed pleading, but he must also serve an affidavit of merits which must substantially comply with Rule 11.

Motion to set aside default judgment is addressed to sound judicial discretion of trial court, and unless it affirmatively appears that there has been an abuse of such discretion, the ruling of the trial court thereon will not be disturbed on appeal. Pettigrew v. Sioux Falls, 5 S. D. 646; Bank v. Stebbins, 10 S. D. 466; Bank v. Fall River, 4 S. D. 124; Evans v. Fall River, 4 S. D. 119; Bank v. Hurley, 13 S. D. 18; Keenan v. Daniels, 18 S. D. 102; Bank v. Decker, 19 S. D. 128; Kjetland v. Peterson, 20 S. D. 58; Corson v. Smith, 22 S. D. 501; McAndrews v. Bank, 25 S. D. 590.

The record does not show that the default judgment was the result of surprise, inadvertence, mistake or excusable neglect, and defendant's motion was properly denied. Pettigrew v. Sioux Falls, 5 S. D. 646; Bank v. Stebbins, 10 S. D. 466; Bank v. Fall River, 4 S. D. 124; Evans v. Fall River, 4 S. D. 119; Bank v. Hurley, 13 S. D. 18; Keenan v. Daniels, 18 S. D. 102; Bank v. Decker, 19 S. D. 128; Kjetland v. Peterson, 20 S. D. 58; Corson v. Smith, 22 S. D. 501; McAndrew v. Bank, 25 S. D. 590; Bazal

v. Stanislaus, (N. D.) 132 N. W. 212; Victor Power Co. v. Coal, (Cal.) 105 Pac. 758; McWhirter v. Donaldson, (Utah) 104 Pac. 731; Scilley v. Babcock, (Mont.) 104 Pac. 677; Harr v. Kight, (Ida.) 108 Pac. 539; Pearce v. Electric Ry., (Mont.) 106 Pac. 563; 23 Cyc. 934.

There are, we believe, practically but two disputed questions of fact. Mr. Wilmarth in his affidavit states that he called upon plaintiff's attorneys about the 17th of June, 1911, and stated, among other things, that "he had been requested to get time for answer." (Abst. folio 61). He does not claim that any promise was made extending the time for answer, and it appears without dispute that he did not enter an appearance nor serve notice of retainer. His statement that he advised counsel for plaintiff that he had been requested to get time for answer is denied by each of plaintiff's attorneys. (554, 574-576, and 579.) The clear preponderance of the evidence is therefore against the claim of appellant on this question, and this court should assume that the trial court so found, and that no request of this character was made of attorneys for plaintiff. The other question of fact which may possibly be said to be a disputed one is as to when the defendant received the summons in this case. L. F. Sater, one of defendant's attorneys, in his affidavit states that the summons was handed to him by the supreme secretary of the defendant order on the 15th of June, and that the summons had been served on the supreme secretary on the 14th of June. (Abst. 430). The secretary, however, does not make any such affidavit, and in fact makes no affidavit at all, although it appears that he was available at the time Mr. Sater made his affidavit and, on the day previous, seems to have verified the proposed answer. This statement is controverted by the letter produced by counsel themselves on this hearing, set out in the abstract at folios 586 to 588, wherein it appears that the summons was in fact transmitted to defendant's attorneys, not by the secretary of the company, but by the supreme surgeon, and it will be noted that this letter transmitting the summons does not indicate when it was served upon the secretary. It will be noted, too, that it appears from the undisputed evidence

that the commissioner of insurance transmitted the summons to the secretary of the defendant company on the 22nd day of May, 1911, and on June 14th, the secretary acknowledged receipt of same, apologizing for his delay in so doing. (Abst. 572-574).

No sane man, we submit, could possibly misunderstand what Mr. Wilmarth meant by this letter of June 17, 1911, and no lawyer certainly could be heard to say that he expected Mr. Wilmarth to enter an appearance—the very thing he says in this letter that he would not do until so directed. All the loose talk in appellant's brief about expecting a copy of the complaint cannot obscure the fact that counsel were not warranted in expecting such copy, and they did not take the steps to secure the same, pointed out in the letter of Mr.. Wilmarth.

That there was no appearance by the defendant until after the entry of judgment is admitted. There was no request for time in which to appear or answer, and, in fact, Mr. Wilmarth, in his conversation, with counsel for defendant, positively stated that he would not enter an appearance until he had been retained by the defendant and paid a retainer fee. The suggestion that courtesies of the profession required plaintiff's counsel to do more than was done in this case is not tenable. There was no counsel for defendant to whom courtesies could be extended. But even . if it should be conceded that Mr. Wilmarth was appearing as counsel for defendant, he did not ask any courtesies from plaintiff's attorneys, and there was no occasion to attempt to force courtesies upon him.

C. M. Taylor, the supreme surgeon, in speaking of this conference which resulted in submitting the so-called autopsy proposition, says that it was agreed that "if such examination disclosed the fact that the deceased had come to his death from any cause or causes included within the terms of this contract, the Order would contest the claim no further, and would pay to the plaintiff the amount of indemnity to which she might be entitled, as' provided by the constitution."

To indicate that this proposition was not submitted in good faith, but simply for the purpose of making an appearance of

fairness, or for the purpose of delay, or both, it need only be suggested that, while one of the conferees was an attorney, the proposition contemplated the violation by the plaintiff of an injunction, thus bringing her, with the defendant, into contempt of court.

Not only was the defendant enjoined, but the plaintiff was likewise enjoined from permitting the defendant or anyone else from disturbing the sepulcher of the said deceased or from performing an autopsy upon his body.

Even if there had been evidence of an oral agreement to extend the time for answer, the court would not regard such claim in view of our statuary provision in relation thereto. Gibson v. Allen, 18 S. D. 417; Kjetland v. Pederson, 20 S. D. 58.

In the case at bar, some capital is sought to be made of the fact that after default judgment was entered a notice of retainer was served upon attorneys for plaintiff. Such a document, we take it, when served after the entry of judgment, is ineffectual for any purpose. It will be observed, too, that in the California case last cited, the attorneys "busied themselves with other matters," but this fact was held not to constitute sufficient ground for opening up a default judgment. McWhirther v. Donaldson, (Utah) 104 Pac. 731.

If it should be conceded that Mr. Wilmarth requested an extension of time for answer or that he understood that he had so requested an extension of time for answer, or that he understood from some alleged conversation wtih plaintiff's attorneys that time for answer would be extended, still, neither he nor his co-attorneys could invoke these facts as constituting diligence, in view of the positive statute in this state to the effect that "no evidence of any agreement by an attorney shall be received except the attorney's own statement, his written agreement or any entry thereof in the record of the court." Pol. Code, Sec. 699; Gibson v. Allen, 18 S. D. 417.

The author of the article on Judgments in 23 Cyc. at page 934, on the question of employment of counsel, says:

"A defendant cannot ordinarily procure the setting aside of a judgment against him on the ground of his mistaken belief that he had retained an attorney to protect his interests; he must see to it that the attorney understands and accepts the retainer; otherwise, his failure to pay personal attention to the case is inexcusable negligence. But where the mistake was as to the employment of counsel by a person who defendant justifiably relied on to attend to that matter as a co-defendant or a business agent, it may furnish cause for vacating the judgment."

CORSON, J. This is an appeal by the defendant from an order overruling its motion to vacate and set aside a default judgment taken against it through alleged mistake or inadvertence on the part of its officers and attorneys, and for leave to serve and file and answer therein.

The plaintiff in this action, who is the surviving widow of William H. Smith, deceased, brought suit to recover on a policy of insurance or certificate of membership in the defendant company. The complaint, after alleging that the deceased was a member in good standing, having paid all dues, assessments, etc., and otherwise complied with the rules and regulations of the order, alleged that the said William Smith had sustained bodily injury by the accidental lodging in his throat of a large piece of orange, which alone and independent of all other causes had occasioned his death within two days from the happening thereof. It was further alleged that the plaintiff had complied with all the conditions on her part to be performed, and judgment was demanded for the sum allowed by its constitution, with interest and costs. The time for answering having expired and no answer having been filed or served, on July 19, 1911, judgment was entered in favor of the plaintiff. On September 30th following the defendant made a motion to vacate and set aside the judgment, and for leave to serve and file an answer. This motion was made upon the pleadings, records, and several affidavits. On October 14, 1911, the court denied the motion, from which order denying the motion this appeal was taken.

It is disclosed by the record that the summons was issued on May 1, 1911, and served on the commissioner of insurance as

agent of the defendant on the 20th day of May, and was forwarded by him to the secretary of the defendant at Columbus, Ohio, on the same day. A correspondence was thereupon opened between the defendant and A. W. Wilmarth, an attorney at law residing at Huron, in this state, the material parts of which correspondence are as follows: "Columbus, Ohio, June 15th, 1911. Smith v. U. C. T. Mr. A. W. Wilmarth, Attorney at Law, Huron, South Dakota—Dear Sir: We have this morning been handed by the claim department of the defendant order a copy of the summons that was served on the commissioner of insurance for South Dakota on the 20th day of May. We are advised by this notice that answer must be filed within thirty days after the service of this summons. We have received no copy of the petition and can do no more at this time than refer the matter to you for immediate attention. You will undoubtedly be able to interpose some motion that will give us time to examine the petition for the purpose of preparing our answer. If you will send a copy of the petition immediately and file some pleading in the case on or before the 20th inst. we will write you more fully as to our views of the case as soon as we have had time to examine the pleading. Very truly yours, Vorys, Sater, Seymour & Pease." To this Mr. Wilmarth replied as follows on June 17th: " * * * As soon as I received your letter called up the firm of Gardner, Fairbank & Churchill and learned that they were the attorneys who had filed the summons. Mr. Gardner, who is looking after this matter specially, is out of the city and will be back Monday. I learned, however, that they had not filed any complaint and no action can be taken by them until they do. They will not attempt to take any advantage after I have notified them of your letter and that I will look after the matter for you. I could enter a general appearance and then they would have to serve all papers on me in the future and we are legally entitled to thirty days after such notice to serve an answer. However, I do not wish to enter a general appearance until I hear from you again. *An appearance will certainly have to be made in order to contest any proceedings.* Mr. Gardner will be back Monday at which time *I will see him about this matter and will follow your*

*suggestions when I hear from you.* I have, many times accommodated Mr. Gardner when he has been away looking after railway cases and I know he has given orders to the firm to extend me any accommodations I want, so we will have all the time we desire in this matter. * * * Kindly let me know at once whether to enter a general appearance and demand the complaint which will give thirty days from the time of its service for answer. Will protect the company against any snap judgment at this end of the line." To this letter of June 17th Mr. Wilmarth received no reply, and on July 18th he wrote to the attorneys at Columbus, Ohio, as follows: "Since receiving your letter relative to the case commenced against the United Commercial Travelers by Mrs. Smith and my answer thereto relative to making an appearance, you have not written. You of course realize that we are in default and as I wrote you, the attorneys for plaintiff will accept a notice of appearance without terms and allow us to put in an answer within any reasonable time thereafter, but I do not think we ought to presume to extend this privilege to any unreasonable time. I saw Mr. McCarvey, the representative from here to the Grand Lodge, U. C. T., and he stated to me that some proposition of settlement was pending but to my mind the interest of the U. C. T. ought to be protected by at least a notice to the other parties of an appearance so that they then cannot take any action without giving us any notice thereof. I simply suggest this as you have not authorized me to enter an appearance and I would not feel warranted in doing that until you authorized me to do so." In reply to this letter, the attorneys in Ohio wired Mr. Wilmarth as follows: "Our Mr. Sater who has had matter in charge out of city you may enter appearance in Smith case and file answer, or if you will send us copy of petition we will prepare answer. Have answer day extended so that we will not be in default."

It will be observed that this telegram was not sent to Mr. Wilmarth until five days after the entry of judgment in the case. It will also be observed that the failure to enter a general appearance on the part of the defendant by Mr. Wilmarth and to obtain a copy of the complaint was through no fault of Mr.

Wilmarth, who had very carefully and fully advised the defendant that it could not expect to secure a copy of the complaint until the company had made a general appearance in the action, and that he declined to enter a general appearance for the defendant *until authorized by it so to do.*

The affidavits made on the motion to vacate and set aside the judgment by the officers of the defendant at Columbus, Ohio, are very voluminous, extending over more than 100 pages of the printed abstract, and no useful purpose would be served by setting them out in this opinion.   It must suffice to say that from the time they received a copy of the summons at Columbus, Ohio, until the telegram of July 24th the regular attorneys of the defendant and its officers neglected to prepare any answer to the complaint and neglected to authorize Mr. Wilmarth to enter its appearance in the action.   So far as these affidavits disclose, no reasonable excuse is offered for this delay, nor are facts disclosed sufficient to constitute inadvertence, surprise, or excusable neglect on the part of the defendant in failing to appear in the action and in failing to file an answer or other pleading therein.   It will be observed by the letter of Mr. Wilmarth of June 17th, written to the general attorneys of the company at Columbus, Ohio, that he warned them that *"an appearance would certainly have to be made in order to contest any proceedings," and asked them to advise him whether or not to enter a general appearance and demand a copy of the complaint, and that more than a month elapsed before an answer was made to this letter.*   The trial court with all the facts fully before it denied the appellant's motion to vacate and set aside the judgment, and this court has repeatedly held that the granting or refusing of such a motion is largely within the sound judicial discretion of the trial court, and that its ruling will not be disturbed unless it is shown that there has been a manifest abuse of such discretion.   McAndrews v. Bank, 25 S. D. 590, 127 N. W. 536; Corson v. Smith, 22 S. D. 501, 118 N. W. 705; Kjetland v. Pederson, 20 S. D. 58, 104 N. W. 677; Meade County Bank v. Decker, 19 S. D. 128, 102 N. W. 597; Keenan v. Daniels, 18 S. D. 102, 99 N. W. 853; Minnehaha National Bank v. Hurley, 13 S. D. 18, 82 N. W. 87; Evans v. Fall River County, 4 S. D. 119,

55 N. W. 862; Merchants' National Bank v. Stebbins, 10 S. D. 466, 74 N. W. 199; Pettigrew v. Sioux Falls, 5 S. D. 646, 60 N. W. 27; Minnekahta State Bank v. Fall River Co., 4 S. D. 124, 55 N. W. 863. We are inclined to take the view that the order of the court in this case should not be reversed, as there was no abuse of the trial court's discretion shown in denying the motion.

The claim made by the appellants that they are entitled to a reversal of the order of the trial court on the ground that the failure to file and serve an answer was the result of inadvertence, surprise, or excusable neglect is not in our opinion sustained by the showing made on the hearing.

The order of the trial court overruling defendant's motion to set aside the judgment and for leave to answer is affirmed.